CASE 22—PETITION EQUITY—OCTOBER 11.

# Grundy v. Louisville & Nashville Railroad Company.

APPEAL FROM WASHINGTON CIRCUIT COURT.

1. RAILROADS—FRAUD IN PROCURING GIFT OF RIGHT OF WAY.—One who donated a right of way through his land to a railroad company can not have the deed cancelled upon the ground that he was ignorant of the fact that the donee, a home organization, was procuring the right of way for another company, which had agreed to complete and operate the road and to pay for such rights of way as the home company should be unable to procure by donation, there being no misrepresentations and no fraud, although it was expressly understood between the two companies that the company which had undertaken to complete and operate the road should not be known in the transaction, in order to

prevent persons who had already agreed to donate the right of way from declining to do so. And especially should the chancellor not cancel the conveyance upon such grounds, in view of the fact that the parties can not now be placed in their former positions, the plaintiff having conveyed to defendant certain depot grounds upon condition that defendant will erect and maintain all necessary depot buildings, and use the same in the running and operation of its road, which defendant has done, thus putting it out of its power to run its road over any other route.

2. SAME.—Whatever the means used to induce the execution of the deed—whether the county pride of plaintiff or the poverty of the donee—as there was an equivalent pecuniary compensation to the plaintiff for the grant, he having given for the road no more than he regarded it as worth to him, he can not for that reason have the deed cancelled.


C. C. McCHORD, JOHN W. LEWIS AND J. W. S. CLEMENT FOR APPELLANT.


1. If the right of way was obtained by fraud, as appellant complains, it is the duty of the court to set aside the deed, and allow him to recover damages for that right of way as if no deed had ever been made.

2. The narrowest and most limited definition of fraud given by any of the text-writers easily embraces the acts complained of in this case. (Cooley on Torts, 474; Story's Eq. Jur., sec. 186.)

Fraud in suppressing the truth vitiates a contract as effectually as misrepresentation. (2 A. K. Mar., 128; 4 Mon., 127; 10 Bush, 32; 5 Dana, 196; 1 Bibb, 183; 79 Ky., 602; 3 Litt., 375; 81 Ky., 165, 458; Cooley on Torts, 475, 477, 494, 495, 516, 517, 520, 521; 1 Met., 319; Story's Eq., 187 *et seq.*)

But in this case there was not only suppression of the truth, but actual misrepresentation.

3. Freedom of will and good faith are as essential to the validity of a gift as in other contracts. (4 Am. & Eng. Enc. of Law, Title, "Gifts;" 1 B. M., 222.)

4. The fact that W. C. McChord held himself out as the representative of the people, while secretly in the employment and pay of the appellee, in itself constitutes a fraud. (5 Bush, 590.)

5. The attention of the court is called to the case of L. & N. R. Co. v. Literary Society of St. Rose, &c., 91 Ky., 395, where a similar subscription was set aside on account of misrepresentation.

Grundy v. Louisville & Nashville Railroad Company.

W. C. M'CHORD AND W. E. SELECMAN FOR APPELLEE.

1. The evidence fails to establish the alleged misrepresentation.
2. Even if there was a. misrepresentation of fact it was of such a. nature that the plaintiff had no right to place reliance upon it, and, therefore, there can be no rescission. (Story's Eq. Jur., sec. 199.)
3. Misrepresentation is not ground for setting aside a contract if the party seeking relief did not believe the false statement and was not influenced by it. (Story's Eq. Jur., sec. 202.)
4. By the transaction of appellant with appellee after the execution. of the deed, he is estopped from having the deed set aside, or has waived his right to maintain this action, if he ever had such right. (Story's Eq. Jur., sec. 203; Whiting v. Hill, 23 Mich., 399; Davis v. Henry, 4 W. Va., 571.)
5. If appellant ever had any cause of action it was barred by the statute of limitation, as no cause of action was stated against appellee, until the filing of the amended petition, July 3, 1893, six and one-half years after the deed was executed.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In October, 1886, the appellant, Grundy, for a nominal consideration, conveyed to the Middle Division of the Ohio & Cumberland Railroad Company the right of way for a railroad through his farm, near Springfield, in Washington county.

In July, 1891, he brought this action against the Louisville & Nashville Railroad Company, to set aside the conveyance upon the ground that it had been obtained by false representations and by fraudulent concealment of certain facts which, had they been disclosed to him, would have prevented him from executing the instrument.

The chancellor upon the hearing refused the relief and dismissed the petition. The grounds relied on by the appellant as set out in his petition, by reason of which he demands a cancellation of the deed, are that, in 1886, the ap-

pellee decided to extend its Bardstown branch road to the town of Springfield, and for that purpose caused a new organization to be formed under the old charter of the Middle Division of the Cumberland & Ohio Railroad Company, and proceeded to procure from the owners of the lands along the line of the proposed extension valuable rights of way without compensation, these rights being obtained ostensibly in behalf of the new organization, which was a home company and known to be without means, whereas, at this time there was an agreement between the president of the Middle Division of the Cumberland & Ohio Railroad Company, and the appellee,that the latter was in fact to furnish the necessary money to pay for the entire right of way; that this agreement was concealed from the public, and the appellant was told that the home company was poor, and unless he donated the right of way the road could not be built; that believing this, and being controlled by his friendship for his neighbors and the people of his county, who had often honored him with high office, he was induced to make the grant; that after the so-called home company had executed the purposes of its creator, the appellee, it sold and transferred to the latter all its rights, franchises and properties of every description, and appellee was now holding same and operating the railroad from the points indicated.

Other matters of detail are alleged, and, while the appellee is not in terms charged with making the alleged false representations, it is charged with procuring its agent or servant—its creature— to make them, and with intent to deceive the appellant. Moreover, by an amended petition filed in March, 1893, it is averred that the agent of the appellee, who was also the president of the home company, made the fraudulent statements by which he was misled and induced to sign the deeds. We are, therefore, inclined

to think that the demurrer to the petition was properly overruled.

It would have been otherwise, if it had appeared from the pleading—as is easily gathered from the proof—that the appellant at that time regarded the benefits to be derived from the construction of the road, not only to himself but to his neighbor countymen, as abundant consideration for the conveyance of the right of way. And here, we may observe, is to be found a sufficient obstacle, if there was no other, to prevent the recovery.

The appellant got the road, and had been trying to get it for many years. He gave for it no more than he is shown to have regarded it worth to him. He was a breeder of shorthorns on an extensive scale; and of fine horses. He had a very large farm and raised, it may be presumed, a large surplus of farm products. A railroad would give him a market for this surplus, and bring buyers for his cattle and horses. His father before him had agreed to donate the right of way through the same farm, and the appellant himself had repeatedly made the same offer. Whatever the means used, therefore, to induce the execution of the deed—whether the county pride of the appellant or the poverty of the donee—there was to him an equivalent pecuniary consideration for the grant. But the allegations of the petition are not supported by the proof to any material extent.

It does appear that the Middle Division of the Cumberland & Ohio Railroad Company proceeded to procure the rights of way—buying some, condemning some and getting others by donation. And it is true that the company was poor, and that its friends and promoters so represented it, and appealed to the citizens along the route, to let their

lands go at reasonable prices and, when possible or able, to donate them.

It is not true, or shown to be true, that the home organization was created by the appellee for the purpose of deceiving the land owners, or that it used that organization for the purpose of defrauding them.

The facts, as set out in the answer and testified to by the president of the home company, and which are not contradicted, are substantially these: The home organization, composed of many of the most substantial and public spirited citizens of Washington county, not the least among whom in intelligence and zeal was the appellant himself, was perfected in good faith to induce the building of a railroad into the county. The preference was to make a deal with the Louisville Southern or the Cheasapeake and Nashville people, for the reason that this would secure a competing line, the Louisville & Nashville being already at Bardstown, a short distance away. All efforts, however, to induce the first-named companies to undertake the work failed, and an appeal was then made to the appellee. After many conferences the final proposition of that company was, that it would complete the road and bind itself to operate it for the sum of $30,000 and the right of way over the entire route. This proposition was submitted to the president of the home company as the ultimatum of the appellee. That official, however, insisted that as the people were very anxious for the road, many of them would give the right of way, and those that could not do so would agree to take very reasonable prices therefor, hence the appellee should agree to take the $30,000, and itself pay for the right of way. The appellee replied that the feeling against corporations would impel the land owners to ask and the juries to give more than the actual value of the land taken, and declined to accede to the modification.

It will be seen here that if the negotiation had ended at this point the appropriation of the county must have been increased by the cost of the right of way, which was estimated at about $15,000, and indeed this proposition the president of the home company, with whom this conference was had, was about to submit to his company, to have approved or rejected by the people in the district which was to make the donation.    But, still desirous of saving the district this charge, he offered in behalf of his company to obtain the right of way at reasonable prices if the appellee would agree to pay for such of them as were not donated by the owners.    This was finally agreed to by the appellee, and the contract entered into by which the home company agreed to procure for the appellee the sum of $30,000 and the right of way for the road.

Under this contract, which we regard as having been made in the best of faith, and as conducive to the best interests of the people who were demanding the road, the appellee had nothing to do with procuring the right of way, and the proof does not disclose that it did have aught to do with it.

It, therefore, made no representations, false or otherwise, to the appellant or others connected with the right of way.    But, in order to prevent those who had agreed to donate the way over their lands from declining to do so, the appellee was not to be known in the transaction.    The proof discloses, however, that during the canvass of the question of appropriation before the people, it was repeatedly announced that not a dollar would the people or the district have to pay in securing rights of way.

In the face of these assurances, and that they were made admits of no doubt, we can not see why the appellant should have drawn the inference that his friends and constituents

would be called on to pay him for his land unless he donated it.

Moreover, as the home company was known to have no money of its own, and the people were not to be called on for any more than the $30,000, and as a number of the land owners required pay for their lands, it was easily inferable that some one was backing the enterprise who was able to put up the necessary money, and if the appellant failed to draw this reasonable inference and donated, instead of selling, his right of way, it was through his own want of perception and not through the deceit of the appellee. And, besides, it is not clear that the appellant was at all misled. He testifies that, although he was told there was no money, yet he did not believe it.

A condition upon which the appellee undertook to build and operate this road was that the home company should obtain the rights of way, and if, in doing so, that company or its officials had announced that the appellee was in fact procuring or paying for them, the condition would have been unperformed, the contract violated and the road not built.

We are, therefore, not able to see upon what equitable principle the chancellor could have canceled the appellant's conveyance, and, especially as the parties could not be placed in their former positions.

The appellant, in the year following the conveyance in question, conveyed certain depot grounds to the railroad company upon the condition that the company erect and maintain "all necessary depot buildings, platform and stock pens and use the same in the running and operation of its road." This the company has done. If the deed is canceled, the company would certainly be left free to build its road over some other route than over the appellant's lands

—as the proof shows it might have done in the first in-stance—paying, of course, for whatever damage the con-struction of the road has caused. But the appellant has put it out of the power of the company to run its road over any other route. In order to use this depot, as the appellant has bound it to do, the road must run as it does now.

Let the judgment of the chancellor be affirmed.